1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA H. OLEA,<br><br>          Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | Case No.  1:21-cv-00876-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 17, 20, 24) |

**I.**

**INTRODUCTION**

Plaintiff Donna H. Olea ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her concurrently submitted applications for Social Security benefits pursuant to Title II and Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]  For the reasons set forth below, Plaintiff's appeal shall be denied.

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 5, 7, 8.)

**II.**

**BACKGROUND**[2]

Plaintiff concurrently filed the instant applications for Social Security benefits under Title II and for Supplemental Security Income ("SSI") under Title XVI on October 4, 2018, alleging disability beginning October 24, 2017.  (See Admin. Rec. ("AR") 226–35, ECF Nos. 9-1, 9-2.)  Plaintiff's claims were initially denied on February 12, 2019, and denied upon reconsideration on April 30, 2019.  (AR 68–101, 102–29.)  On June 10, 2020, Plaintiff, represented by counsel,[3] appeared via telephonic conference, for an administrative hearing before ALJ Robert Milton Erickson (the "ALJ").  (AR 27–59.)  Vocational expert ("VE") Scott K. Nielson, also testified at the hearing.  On June 29, 2020, the ALJ issued a decision denying benefits.  (AR 10–26.)  On April 27, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 1–6.)

Plaintiff initiated this action in federal court on June 2, 2021, and seeks judicial review of the denial of her applications for benefits.  (ECF No. 1.)  The Commissioner lodged the administrative record on November 16, 2021.  (ECF No. 9.)  On March 15, 2022, Plaintiff filed her opening brief.  (ECF No. 17.)  On May 16, 2022, Defendant filed a brief in opposition.  (ECF No. 20.)  Plaintiff filed a reply brief on June 3, 2022 (ECF No. 14), and the matter is deemed submitted on the pleadings.

**III.**

**LEGAL STANDARD**

**A.     The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

[3] At the administrative level, Plaintiff was represented by attorneys Jonathan Pena, of the law firm Pena & Bromberg, PC, and Rafi Issagholian.  (See AR 13, 61.)  Mr. Issagholian represented Plaintiff at the hearing before the ALJ.  (See AR 13.)  Plaintiff is currently represented by attorney Dolly M Trompeter, who is also of the law firm Pena & Bromberg, PC.  (See ECF No. 17 at 1.)

determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[5] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

   Before making the step four determination, the ALJ first must determine the claimant's

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[5] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks both disability and SSI benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to both claims addressed in the instant matter.

RFC.   20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[6]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

## B.   Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

---

[6] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

///

///

**IV.**

**THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The ALJ conducted the five-step disability analysis and made the following findings of fact and conclusions of law as of the date of the decision, June 29, 2020 (AR 15–21):

At step one, the ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2022, and Plaintiff has not engaged in substantial gainful activity since October 24, 2017, the alleged onset date.  (AR 15 (citing 20 C.F.R. §§ 404.1571 et seq.; 416.971 et seq.).)

At step two, the ALJ determined Plaintiff has the following severe impairments: status post fracture of bilateral tibia with degenerative joint disease of the left knee, status post fracture of left scapula with residual acromioclavicular joint dislocation, and obesity.  (Id. (citing 20 C.F.R. §§ 404.1520(c); 416.920(c)).)  The ALJ also noted Plaintiff has nonsevere impairments of diabetes mellitus with hyperglycemia, hypertension and headaches, along with reported symptoms of low back pain and urinary incontinence.  (AR 16.)  Nonetheless, the ALJ noted he considered any potential effects these purported impairments might cause or contribute in combination with Plaintiff's other impairments to the RFC.  (Id.)

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id. (citing 20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526; 416.920(d); 416.925; 416.926).)

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform:

> **sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except with the following limitations: lift/carry no more than 10 pounds occasionally and frequently; stand/walk up to 4 hours in an eight-hour workday with a cane; occasionally walk over uneven terrain; no restriction sitting; never climb, balance, kneel, or crawl; avoid concentrated exposure to cold.  Occasionally is defined as occurring from very little up to one-third of the time, or approximately 2 hours in an 8-hour workday.  Frequent is defined as occurring from one-third to two thirds of the time or approximately 6 hours in an 8-hour workday.**

6

1 (AR 16–19 (citing 20 C.F.R. §§ 404.1529; 416.929; SSR 16-3p, available at 2017 WL 5180304

2 (Oct. 25, 2017)) (emphasis in original).)

3       At step four, the ALJ found Plaintiff is unable to perform past relevant work.  (AR 19

4 (citing 20 C.F.R. §§ 404.1565; 416.965).)

5       At step five, the ALJ noted Plaintiff was born on January 24, 1972, and was 45 years old

6 (which is defined as a younger individual age 45–49) on the alleged disability onset date; Plaintiff

7 has a limited education and is able to communicate in English; and transferability of job skills is

8 not material to the determination of disability because using the Medical-Vocational Rules as a

9 framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has

10 transferrable job skills.  (AR 19–20 (citing 20 C.F.R. §§ 404.1563; 416.963; 404.1564; 416.964;

11 SSR 82-41, available at 1982 WL 31389 (Jan. 1, 1982); 20 C.F.R. Part 404, Subpart P, Appendix

12 2).)  Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there

13 are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such

14 as:

15  • Document Preparer (Dictionary of Occupational Titles ("DOT") 249.587-018), a

16      sedentary work position with a specific vocational preparation ("SVP") level of 2, and

17      approximately 19,044 jobs available in the national economy;

18  • Addresser (DOT 209.587-010), a sedentary work position with an SVP level of 2, and

19      approximately 3,002 jobs available in the national economy; and

20  • Call Out Operator (DOT 237.37-014), a sedentary work position with an SVP level of 2,

21      and approximately 3,386 jobs available in the national economy.

22 (AR 19–20 (citing 20 C.F.R. §§ 404.1569; 404.1569(a); 416.969; 416.969(a); 20 C.F.R. Part 404,

23 Subpart P, Appendix 2; SSR 83-11, available at 1983 WL 31252 (Jan. 1, 1983); SSR 83-12,

24 available at 1983 WL 31253 (Jan. 1, 1983); SSR 83-14, available at 1983 WL 31254 (Jan. 1,

25 1983); SSR 85-15, available at 1985 WL 56857 (Jan. 1, 1985)).)  With respect to the identified

26 jobs, the ALJ noted the VE's testimony was consistent with the DOT and, with respect to the

27 specified RFC limitations, the VE's testimony was based on his professional experience.  (AR

28 20.)

Therefore, the ALJ found Plaintiff has not been under a disability, as defined in the Social Security Act, from October 24, 2017 (the alleged onset date), through June 29, 2020 (the date of decision).  (AR 20–21 (citing 20 C.F.R. §§ 404.1520(g); 416.920(g)).)

## V.

## DISCUSSION

Plaintiff asserts two issues on appeal: (1) the ALJ harmfully erred by failing to identify a "significant number" of jobs in the national economy that Plaintiff could perform at step five of the sequential evaluation; and (2) the ALJ committed harmful error by failing to provide "clear and convincing" reasons for rejecting the severity of symptomology evidence.  (ECF No. 17 at 2, 8–19.)

### A.   Whether the ALJ Failed to Identify a "Significant Number" of Jobs in the National Economy that Plaintiff Could Perform at Step Five of the Sequential Evaluation

Though not immediately discernable from the heading of the first issue in her pleading, Plaintiff argues the ALJ's inaccurate hypothetical posed to the VE runs afoul of his duty to resolve any apparent conflicts between occupational evidence and the DOT pursuant to SSR 00-4p.

#### 1.   Legal Standard

As previously noted, at step five, the Commissioner has the burden to "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [her] identified limitations."  Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (citation and internal quotations omitted).  The ALJ must consider potential occupations the claimant may be able to perform, based on the claimant's RFC, age, education and work experience, and the information provided by the DOT and the VE.  See id. at 845, 846; Valentine v. Astrue, 574 F.3d 685, 689 (9th Cir. 2009);  20 C.F.R. § 416.920(g).

Where the testimony of a VE is used, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy.  20 C.F.R. § 404.1566(b); see Burkhart v. Bowen, 856 F.2d 1335, 1340 n. 3 (9th Cir. 1988).  Hypothetical questions posed to the VE must set out all

1   limitations and restrictions of the particular claimant, as supported by the medical record.

2   Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

3        SSR 00-4p provides that where there is an apparent unresolved conflict between VE

4   evidence and the DOT, the ALJ is required to reconcile the inconsistency; that is, the ALJ must

5   elicit a reasonable explanation for the conflict before relying on the VE to support a determination

6   or decision about whether the claimant is disabled.   SSR 00-4p, at *2, available at 2000 WL

7   1898704 (Dec. 4, 2000); Zavalin, 778 F.3d at 846 (providing example of apparent conflict as

8   "expert testimony that a claimant can perform an occupation involving DOT requirements that

9   appear more than the claimant can handle"); Massachi v. Astrue, 486 F.3d 1149, 1153–54 (9th

10  Cir. 2007).   The ALJ must inquire, on the record at the disability hearing, as to whether or not

11  there is such consistency.   SSR 00-4p, at *2; see also Massachi, 486 F.3d at 1152.   Further, the

12  Social Security Administration ("SSA") notes neither the DOT nor the VE's evidence

13  "automatically 'trumps' when there is a conflict"; rather, the ALJ must resolve the conflict by

14  determining if the explanation given by the VE is reasonable and provides a basis for relying on

15  the VE's testimony rather than the DOT information.   SSR 00-4p, at *2.

16       Where the ALJ fails to resolve an apparent inconsistency, the court is left with "a gap in

17  the record that precludes [it] from determining whether the ALJ's decision is supported by

18  substantial evidence."   Zavalin, 778 F.3d at 846; Massachi, 486 F.3d at 1154 ("we cannot

19  determine whether the ALJ properly relied on [the VE's] testimony" due to unresolved

20  occupational evidence).

21       2.   Analysis

22       In his decision, the ALJ found Plaintiff has a "limited education," as she only completed

23  the 11th grade.   (AR 19.)   However, in determining that there are jobs existing in substantial

24  numbers in the national economy that Plaintiff could perform despite her identified limitations,

25  the ALJ presented a hypothetical to the VE of a person with a "high school education."   (AR 54.)

26  Based on the ALJ's hypothetical, the VE identified available jobs of Document Preparer,

27  Addresser and Call Out Operator.   (AR 54–55.)   The ALJ subsequently relied upon the VE's

28  testimony identifying jobs that the hypothetical high school graduate could perform, instead of

1   determining whether any jobs existed that a person of "limited education" could perform or
2   resolving the "conflict" created by his inaccurate hypothetical.  (See AR 19, 54–55.)

3       In challenging the ALJ's step five determination, Plaintiff argues: (a) the ALJ presented a
4   hypothetical to the VE that inaccurately inflated Plaintiff's education level, resulting in the
5   identification of jobs that Plaintiff contends she lacks capacity to actually perform; (b) the ALJ
6   failed to resolve the conflict between the education level identified in his hypothetical and the
7   education level he found Plaintiff to possess in his decision, thus improperly relying on the VE's
8   testimony and running afoul of SSR 00-4p; and (c) the ALJ's error was not harmless, because it
9   resulted in the identification of, at most, 3,002 jobs nationwide, which does not constitute a
10  "significant number" of jobs in the national economy.  As a consequence, Plaintiff argues the ALJ
11  erred in his nondisability determination.  (ECF No. 17 at 8–14.)

12          **a.      Education Level Presented in Hypothetical to VE**

13      It is undisputed that the ALJ determined in his decision that Plaintiff has a "limited
14  education," but the hypothetical he advanced to the VE described a person with a "high school
15  education."  This discrepancy likely amounts to error, to the extent that the Ninth Circuit requires
16  the ALJ to set out all limitations and restrictions of the claimant that are supported by the record,
17  and the record reflects that the highest grade of school Plaintiff completed was the 11th grade.
18  (See AR 259); Embrey, 849 F.2d at 422 ("If the assumptions in the hypothetical are not supported
19  by the record, the opinion of the vocational expert that claimant has a residual working capacity
20  has no evidentiary value.") (citations omitted).   However, the Court finds such error to be
21  harmless for the reasons that follow.

22          **b.      "Apparent Conflict" Under SSR 00-4p**

23      Plaintiff argues the ALJ failed to resolve the apparent conflict between the available jobs
24  identified by the VE based on the ALJ's flawed hypothetical and Plaintiff's actual reasoning level
25  abilities,[7] based on her "limited education."  Plaintiff argues the ALJ's inaccurate hypothetical
26  triggers his duty to resolve any apparent conflicts between occupational evidence and the DOT

---

27  [7] Two of the three jobs identified by the VE require a reasoning level of 3: Document Preparer and Call Out
28  Operator.  See 1991 WL 672349; 1991 WL 672186.  The third job identified by the VE, Addresser, has a Reasoning
    Level of 2.  See 1991 WL 671797.

pursuant to SSR 00-4p.  Defendant argues the alleged conflict Plaintiff identifies is not "apparent or obvious"; therefore, the ALJ was not required to ask about it.  (ECF No. 20 at 4–5.)  While the Court acknowledges the ALJ may have manufactured some conflict with respect to the education levels attributed to Plaintiff, it nonetheless finds Defendant has the better argument under the circumstances of this case:

The DOT describes the requirements for each listed job, including the General Educational Development ("GED") level necessary to perform the job.  Zavalin, 778 F.3d at 846; see also DOT, App. C - Components of the Definition Trailer, 1991 WL 688702.  The GED scale is composed of three divisions: reasoning development, mathematical development, and language development.  DOT, App. C, 1991 WL 688702.  The GED level indicated by the DOT for a job, in turn, indicates which level of each division is required to perform the job.  Id.  The GED divisions' levels range from 1 (which requires the least level of ability) to 6 (which requires the most).  Id.

As relevant here, reasoning level 2 requires the claimant to

> [a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.

Id.  Reasoning level 3, by contrast, requires the claimant to

> [a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations.

Id.

Meanwhile, the SSA regulations define "limited education" as

> ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs.

20 C.F.R. § 404.1564(b)(3).  The SSA typically considers claimants with a formal education of 7th grade through the 11th grade to have a limited education.  Id.

Claimants with a "high school education," by contrast, are presumed to have "abilities in

reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above," and are considered to be capable of performing "semi-skilled through skilled work." 20 C.F.R. § 404.1564(b)(4).

Notably, the definitions for "limited" and "high school" education levels appear to be general presumptions based on grade level completion, but do not specify a bright line rule for which reasoning level, mathematics level, or language level is achieved by this time in the claimant's formal development. Instead, the SSA differentiates the levels of education by indicating a capacity to perform semi-skilled or skilled work as opposed to unskilled. Meanwhile, there is no indication that requirements to perform semi-skilled or skilled work are equivocal to a reasoning level 3 requirement. In fact, as apparent from the previously identified terms, there is no mention of specific reasoning levels in the definitions for educational levels. Indeed, while noting that educational background is relevant, the Ninth Circuit has expressly held "there is no rigid correlation between reasoning levels and the amount of education that a claimant has completed." Zavalin, 778 F.3d at 847 (citation omitted).

Here, Plaintiff's suggestion that the ALJ's discrepancy between "limited" and "high school" education has resulted in an "apparent conflict" with the VE's testimony is unavailing because Plaintiff fails to bridge the gap between semi-skilled or skilled work and the different reasoning levels. Instead, the Court notes SSR 00-4p addresses and defines the "skill level" required to perform "unskilled," "semi-skilled," and "skilled" work pursuant to the specific vocational preparation (SVP) time for each occupation as described in the DOT. SSR 00-4p, at *3. Importantly, SSR 00-4p explains that

> [u]sing the skill level definitions in 20 CFR 404.1568 and 416.968, **unskilled work corresponds to an SVP of 1–2**; semi-skilled work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9 in the DOT."

Id. (emphasis added). Importantly, the three positions identified by the VE all have an SVP level of 2 (see AR 20, 54–55), which corresponds to unskilled work. Therefore, the positions identified by the VE, even despite the ALJ's hypothetical involving a person with a high school education, all correspond to unskilled work pursuant to the DOT, and thus, may still be performed by

1   Plaintiff with her "limited education."

2   On this record, and in light of the Ninth Circuit's holding, the Court can discern no

3   "apparent" conflict between the education levels and the reasoning levels required in the jobs

4   ultimately identified by the VE.   Because there is no "apparent" conflict, the ALJ was not

5   required to elicit further testimony from the VE.  Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir.

6   2016).  Thus, the Court agrees with Defendant that the issue with the ALJ's hypothetical does not

7   trigger the requirements of SSR 00-4p.

8       **c.**    **Harmless Error**

9   Finally, even if the ALJ erred in relying on the VE's testimony without further discussing

10   the difference between Plaintiff's "limited" education versus a "high school" education, the Court

11   finds any such error is ultimately harmless.

12   As previously noted, even if the ALJ has erred, the Court may not reverse the ALJ's

13   decision where the error is harmless.  Stout, 454 F.3d at 1055–56.  An error is harmless if it is

14   "inconsequential to the ultimate nondisability determination."  Molina v. Astrue, 674 F.3d 1104,

15   1117 (9th Cir. 2012), superseded by regulation on other grounds (quoting Lewis, 236 F.3d at 503)

16   (holding "an error is harmless so long as there remains substantial evidence supporting the ALJ's

17   decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.' ").

18   Moreover, it is the Plaintiff's burden to establish an error is not harmless.  See Shinseki, 556 U.S.

19   at 409.  Within the context of a step five challenge, the Ninth Circuit has indicated that a failure to

20   resolve an "apparent inconsistency" constitutes error when there is "unresolved occupational

21   evidence," such that the court is left with "a gap in the record that precludes [it] from determining

22   whether the ALJ's decision is supported by substantial evidence."  Zavalin, 778 F.3d at 846;

23   Massachi, 486 F.3d at 1154.

24   Here, Plaintiff argues the discrepancy created by the ALJ with respect to the differing

25   education levels is significant because the SSA provides different reasoning level capacities for a

26   person of "limited" versus "high school" education, and the ALJ did not establish Plaintiff can

27   perform the jobs identified by the VE which were based on a hypothetical person with a high

28   school education.  However, the Court finds this argument is unpersuasive because Plaintiff's

distinction between "limited" and "high school" education does not preclude the Court from determining that the ALJ's decision is supported by substantial evidence.

Again, the ALJ must identify jobs Plaintiff can perform despite her limitations, based on a consideration of Plaintiff's RFC, age, education and work experience, *as well as* the information provided by the DOT and the VE.   20 C.F.R. § 416.920(g); Zavalin, 778 F.3d at 845; Valentine, 574 F.3d at 689.  Here, the only factor in the ALJ's step five determination Plaintiff is challenging is the VE's testimony, to the extent it was affected by the ALJ's hypothetical of a person with a high school education.

As to this singular challenge, the Court finds the Ninth Circuit's decision in Zavalin v. Colvin particularly instructive.  In Zavalin, the Ninth Circuit expressly rejected the argument that the DOT's reasoning levels correspond only to a person's level of education, stating "there is no rigid correlation between reasoning levels and the amount of education that a claimant has completed."  Zavalin, 778 F.3d at 847.  Instead, the Ninth Circuit stressed that the GED reasoning levels are defined to include formal as well as informal education, which also includes past work experience, daily activities, hobbies, or any other type of responsibility that may show the claimant has translatable work abilities, despite lacking a formal education.  Id.; see also 20 C.F.R. § 404.1564 ("the numerical grade level that you completed in school may not represent your actual educational abilities.").  Based on this reasoning, the Zavalin court found the ALJ erred in failing to consider the claimant's true reasoning level abilities by only presenting the claimant's education level as "high school" education, and ignoring the facts that the claimant was in special education classes, succeeded in regular classes only with special accommodations that allowed him to work at his own pace, only graduated with a "modified diploma," which is conferred on "students who have demonstrated the inability to meet the full set of academic content standards for a high school diploma even with reasonable modifications and accommodations," and that the RFC determination limited the claimant to only "simple and routine" work.  Zavalin, 778 F.3d at 847–48.

Here, importantly, the Court notes the ALJ determined Plaintiff had a "limited education" because she only completed schooling up to grade 11, and for no other reason.  Meanwhile, the

cutoff in formal education that is used by the SSA to distinguish a "limited education" from a "high school education" is the 11th grade.  That is, the SSA typically defines a claimant with a formal education between 7th and 11th grade as having a "limited education"; whereas the SSA typically finds a claimant who has completed formal schooling at a 12th grade level or above to have at least a "high school education."  Compare 20 C.F.R. § 404.1564(b)(3) with 20 C.F.R. § 404.1564(b)(4).  Even more importantly, in considering Plaintiff's "true reasoning level abilities," the Court notes there is no evidence in the record that Plaintiff has a learning or mental functional impairment, there is no indication Plaintiff required or received any special accommodations during her formal education through the 11th grade, and Plaintiff's disability application is based purely on physical, not mental, impairments.  Consequently, the RFC determination pertains only to physical impairments; thus, unlike Zavalin, there is no limitation to "simple and repetitive tasks," or any other mental functional restriction.[8]  Accordingly, the Court finds the discrepancy between having reported Plaintiff's education level as "high school" as opposed to "limited," a distinction which appears to be based solely on the difference of completion of one year of formal education, does not alter the ALJ's evaluation of Plaintiff's "true reasoning level abilities" and would not otherwise affect his ultimate determination of nondisability.

Even applying the rigid definition-based approach utilized by Plaintiff, it is apparent from the record that Plaintiff is capable of performing the jobs identified by the VE, thus any error resulting from the ALJ's reliance on the VE's testimony was harmless.  To this point, the Court notes Plaintiff's prior employment experience was classified as cashier II (DOT 211.462-010); laborer, stores (DOT 922.687-058); waitress, bar (DOT 311.477-018); and janitor (DOT 381.687-018).[9]  (AR 19.)  The DOT indicates that the positions of cashier II and waitress both require

---

[8] Further, for reasons the Court shall discuss herein, the ALJ properly discounted Plaintiff's symptom testimony such that the RFC determination is otherwise unchallenged.  See Gardner v. Barnhart, 73 Fed. App'x. 193, 196 (9th Cir. 2003) ("Considering that the ALJ gave sufficient reasons for rejecting [the claimant's] testimony, his hypothetical to the vocational expert and his [RFC] assessment did not need to take [the claimant's] subjective complaints into consideration.").

[9] Again, Plaintiff has not challenged the ALJ's finding as to her past relevant work, and therefore waives any argument on the issue.  See Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003).  Furthermore, because Plaintiff's disability claim is based on physical impairments only, it is plain that the ALJ determined Plaintiff can no longer perform her past relevant work due only to her physical impairments, and not due to any mental restrictions; in fact, the ALJ expressly states "[t]he *exertional demands* of the claimant's past

performance at a reasoning level of 3.  See DOT, 211.462-010, available at 1991 WL 671840 (Jan. 1, 2016) (Cashier II); DOT 311.477-018, available at 1991 WL 672685 (Jan. 1, 2016) (waiter/waitress, bar).  Accordingly, Plaintiff's prior relevant work demonstrates she has already performed positions categorized by the DOT at a reasoning level of 3, and is therefore capable of performing jobs with a reasoning level of 3 now.[10]  Indeed, nothing in the record indicates—nor has Plaintiff submitted any evidence—that she is no longer capable of performing at this same reasoning level.  Thus, the ALJ's reliance on testimony that Plaintiff could perform the positions identified by the VE which also have a reasoning level of 3 is harmless.[11]

### B.   Whether the ALJ Failed to Provide "Clear and Convincing Reasons for Rejecting the Severity of Symptomology Evidence

#### 1.   Plaintiff's Testimony

On October 24, 2017, the alleged date of onset, Plaintiff was struck by a car and she sustained fractures to her lower extremities and left scapula.  (See, e.g., AR 226, 228; 384, 419.) Plaintiff underwent multiple surgical procedures.  (See AR 426–28, 430, 444, 450–58.)  She was discharged from the hospital on November 9, 2017, with the diagnoses of bilateral tibia plateau fractures, external fixation converted to internal fixation, primary repair of lateral meniscus of left knee and closed treatment of scapular fracture.  (See AR 430–32.)

Plaintiff's October 4, 2018 disability application alleges severe pain in both legs and

---

relevant work exceed the claimant's residual functional capacity."  (AR 19 (emphasis added).)

[10] Plaintiff appears, at times, to conflate the SVP 3 with Reasoning Level 3.  (See, e.g., ECF No. 17 at 12.)  However, these are different terms under the DOT and SSA regulations.  Again, "SVP," which stands for specific vocational preparation, refers to the amount of training time it generally takes a claimant to learn how to perform each occupation as described in the DOT.  SSR 00-4p, at *3.  Reasoning level, by contrast, is one of three divisions (alongside mathematical level, and language level) that relate to a claimant's GED.  DOT, App. C, 1991 WL 688702. Thus, the SVP and reasoning level pertain to different abilities of the claimant, and are not equivocal.  Indeed, there are instances in which a listed position requires SVP and reasoning levels of different levels.  For example, Plaintiff's prior relevant work position of cashier II requires a reasoning level of 3, but is categorized as an SVP 2 position.  See 1991 WL 671840.

[11] The Court notes this harmless error analysis differs from Plaintiff's argument, which focuses on the number of available jobs in the national economy.  (See ECF No. 17 at 12–14 (Plaintiff argues that, if the jobs identified by the VE that are classified as reasoning level 3 are eliminated, the only remaining job Plaintiff could perform is Addresser, with only 3,002 jobs available nationally, and this does not constitute a "significant number" of jobs in the national economy).)  However, having determined that any error in relying on the VE testimony was harmless because substantial evidence supports the ALJ's finding that Plaintiff can perform the three positions identified by the VE, the Court does not reach this additional argument asserted by Plaintiff.

knees and her left shoulder, swollen ankles, lower back pain, diabetes, and high blood pressure. (AR 258.)  She testified that she is unable to work because she has difficulty walking, becomes out of breath, needs to use a cane, has swelling, and feels uncomfortable while out in public.  (AR 42–50.)  Plaintiff testified that she has difficulty shopping for groceries because she becomes tired with prolonged walking and she has leg swelling with prolonged standing.  (AR 43–44.)

     2.    <u>Legal Standard</u>[12]

The ALJ is responsible for determining credibility,[13] resolving conflicts in medical testimony, and resolving ambiguities.  <u>Andrews</u>, 53 F.3d at 1039.  A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; <u>see also</u> <u>Orn</u>, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.").

Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  <u>See</u> <u>Garrison v. Colvin</u>, 759 F.3d 995, 1014 (9th Cir. 2014); <u>Smolen</u>, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  <u>Garrison</u>, 759 F.3d at 1014; <u>Smolen</u>, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  <u>Lambert v. Saul</u>, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

> If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. In this regard, questions of credibility and resolutions of conflicts in

---

[12]  Although Defendant emphasizes disagreement with the "clear and convincing reasons" standard in order to preserve the issue for future appeals, Defendant acknowledges it is the applicable standard for weighing credibility in the Ninth Circuit.  (ECF No. 20 at 7 n.3.)

[13]  SSR 16-3p applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, at *1-2.

the testimony are functions solely of the Secretary.

Valentine, 574 F.3d at 693 (quotation omitted); see also Lambert, 980 F.3d at 1277.

Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence."  See Vertigan, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").  Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide an additional reason for discounting the testimony.  See Burch, 400 F.3d at 680–81; see also Stobie v. Berryhill, 690 Fed. App'x 910, 911 (9th Cir. 2017) (finding ALJ gave two specific and legitimate clear and convincing reasons for rejecting symptom testimony: (1) insufficient objective medical evidence to establish disability during the insured period and (2) symptom testimony conflicted with the objective medical evidence).

Nevertheless, the medical evidence "is still a relevant factor in determining the severity of [the] claimant's pain and its disabling effects."  Burch, 400 F.3d at 680–81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).  Indeed, Ninth Circuit caselaw has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records, deeming the latter sufficient on its own to meet the clear and convincing standard.  See Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (affirming ALJ's determination claimant's testimony was "not entirely credible" based on contradictions with medical opinion)) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); see also Woods v. Comm'r of Soc. Sec. (Woods I), No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be  sufficient."

1   (emphasis in original)).

2        Additional factors an ALJ may consider include the location, duration, and frequency of

3   the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage,

4   effectiveness or side effects of any medication; other measures or treatment used for relief;

5   conflicts between the claimant's testimony and the claimant's conduct—such as daily activities,

6   work record, or an unexplained failure to pursue or follow treatment—as well as ordinary

7   techniques of credibility evaluation, such as the claimant's reputation for lying, internal

8   contradictions in the claimant's statements and testimony, and other testimony by the claimant

9   that appears less than candid.   See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014);

10  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d

11  1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284.  Thus, the ALJ must examine the record as

12  a whole, including objective medical evidence; the claimant's representations of the intensity,

13  persistence and limiting effects of her symptoms; statements and other information from medical

14  providers and other third parties; and any other relevant evidence included in the individual's

15  administrative record.  SSR 16-3p, at *5.

16       Finally, so long as substantial evidence supports the ALJ's assessment of a claimant's

17  subjective complaint, the Court "will not engage in second-guessing." Thomas, 278 F.3d at 959.

18       3.   Analysis

19       As noted, the ALJ determined Plaintiff has the severe impairments of status post fracture

20  of bilateral tibia with degenerative joint disease of the left knee, status post fracture of left scapula

21  with residual acromioclavicular joint dislocation, and obesity (AR 15), and Plaintiff has not

22  challenged this finding.  As a result, the ALJ was required to make a credibility finding as to

23  Plaintiff's testimony.  Valentine, 574 F.3d at 693; Lambert, 980 F.3d at 1277.  Because the ALJ

24  made no finding that Plaintiff was malingering, he was required to give clear and convincing

25  reasons as to why he did not find Plaintiff's subjective contentions about her limitations to be

26  persuasive.  Id.

27       **a.**    **Inconsistencies with the Medical Record**

28       One reason provided by the ALJ is that Plaintiff's allegations are inconsistent with the

medical evidence. (AR 18.) For example, the ALJ noted that, Plaintiff had no surgical complications and received limited, conservative treatment after she was discharged from the hospital in 2017. (Id.) The ALJ also noted the clinical findings are inconsistent with the extent of Plaintiff's reported limitations, "Contrary to a debilitating condition, the claimant did not require severe pain medication and she declined additional surgical consideration." (Id. (citing AR 533, 945).) More specifically, the ALJ noted that, despite her subjective complaints of pain, Plaintiff had full range of motion in the left shoulder with slight discomfort, no swelling, non-focal neurologic findings, normal motor strength, and normal sensory examination. (AR 17 (citing AR 488–535, 649, 682, 701, 711–17, 754–97, 895).) In January 2019, Plaintiff complained of posttraumatic injuries and worsening back pain, demonstrated antalgic gait and decreased range of motion in the knees, walked with a cane, and was unable to walk on her toes or heels. Nonetheless, her examination revealed no weakness, no swelling, no pain on motion, 5/5 strength throughout without focal motor deficits, and intact sensation. (AR 18 (citing AR 719–25).) The ALJ also noted the record contains inconsistent findings concerning Plaintiff's gait, in that it was also described as normal. (Id. (citing AR 477–536, 649, 701, 711, 717).)

The ALJ's reference to the medical records to identify inconsistencies in Plaintiff's testimony constitutes a specific, clear, and convincing reason supported by substantial evidence in the record that supports the ALJ's adverse credibility determination. Lambert, 980 F.3d at 1277; Hairston, 827 Fed. App'x at 773; Carmickle, 533 F.3d at 1160; Woods I, 2022 WL 1524772, at *10 n.4; Osenbrock, 240 F.3d at 1165–66 (affirming ALJ's reliance on normal physical examination findings as a basis for rejecting claims of disabling pain).

Plaintiff acknowledges the ALJ summarized her symptom allegations/testimony and the medical evidence, and indicated that Plaintiff's allegations were inconsistent with the medical record; however, she appears to take issue with the brevity of the ALJ's opinion, and the overall organization of the decision. In sum, she appears to argue the ALJ failed to link the at issue testimony because the summary of medical record and testimony occur in another portion of the decision. (ECF No. 17 at 15–16.) The Court finds Plaintiff's argument unpersuasive. The Ninth Circuit does not require an ALJ to "perform a line-by-line exegesis of the claimant's testimony"

1     or "draft dissertations when denying benefits."  Lambert, 980 F.3d at 1277; see also Treichler v.

2     Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (noting "the ALJ's analysis

3     need not be extensive," but need only "provide some reasoning in order for [the court] to

4     meaningfully determine whether the ALJ's conclusions were supported by substantial

5     evidence.").  Furthermore, "[e]ven when an agency explains its decision with less than ideal

6     clarity, [the court] must uphold it if the agency's path may reasonably be discerned.  Molina, 674

7     F.3d at 1121.

8          Here, the ALJ expressly states "[c]linical findings, as discussed, are inconsistent with the

9     extent of [Plaintiff's] reported limitations.  Contrary to a debilitating condition, …"  and then

10    proceeds to list a number of inconsistent clinical findings, with citations to the record in the same

11    sentence.  (AR 18.)  Such a statement plainly identifies the testimony the ALJ found to be not

12    credible and explains what evidence undermines the testimony.  Lambert, 980 F.3d at 1277; see

13    also Molina, 674 F.3d at 1112–13 (noting evidence that contradicts "claims of a totally

14    debilitating impairment" may be considered in adverse credibility determination).  Furthermore,

15    the ALJ's finding is bolstered in his summary of the medical record, in which he notes additional

16    clinical findings which are inconsistent with Plaintiff's claim of totally debilitating symptoms.

17    (See AR 17–18.)  Based on the aforementioned authorities, the Court finds the ALJ has presented

18    sufficient reasoning, based on substantial evidence, to support his finding that Plaintiff's

19    allegation of debilitating symptoms is inconsistent with the medical record.

20          Plaintiff also argues the ALJ failed to consider a litany of allegations regarding her

21    symptomology, she appears to take issue with the ALJ's consideration that she had no surgical

22    complications, and she contends the ALJ "cherry picked" findings of a normal gait because there

23    are also a number of records demonstrating occasions on which Plaintiff had an antalgic gait.

24    (See ECF No. 17 at 16, 18.)  But the ALJ is not required to discuss and reject every single one of

25    Plaintiff's discrete pain allegations in order to reach an adverse credibility finding and Plaintiff

26    certainly does not identify any legal authorities to support such a contention.[14]  Furthermore, the

27

28    [14] To the contrary, the Ninth Circuit has demonstrated that an ALJ may reject one or several specific allegations (as concerning pain, symptoms, limitations, etc.) to reach an adverse credibility determination.  In Carmickle v. Comm'r, Soc. Sec. Admin., for example, the ALJ rejected the claimant's testimony as to only four specific allegations.

Court deems it noteworthy that, while finding some clinical evidence was inconsistent with Plaintiff's allegations of *completely* debilitating symptoms, the ALJ plainly considered Plaintiff's complaints of pain and medical records supporting limitations to her impairments and this is reflected in the RFC determination limiting Plaintiff to sedentary work, plus multiple additional physical restrictions, such as lift/carry and standing/walking restrictions.  (See AR 16.)

Finally, the Court notes the Ninth Circuit's discussion in Gardner v. Barnhart is instructive with respect to Plaintiff's cherry-picking argument.  In rejecting a similar argument presented by the claimant in that case, the Ninth Circuit explained:

> [The claimant] also asserts that the ALJ took medical reports out of context and relied on them as such in making his decisions. The ALJ weighed all of the evidence he credited.  The medical evidence in this case is extensive and could be interpreted in various ways.  The ALJ interpreted it in a reasonable manner. When the evidence presented could support either affirming or reversing the Commissioner's conclusions, this court cannot substitute its own judgment for that of the Commissioner.  Here, despite any allegation of evidence taken out of context, the ALJ's conclusions are supported by substantial evidence. The ALJ supported his evaluation with articulated analysis of the evidence and citation to specific substantial evidence in the record. He cited specific reports for his conclusions and gave sufficient legitimate reasons for rejecting others.  This is all that he is required to do."

Gardner, 73 Fed. App'x at 195 (internal citations omitted).  For the same reasons articulated by the Ninth Circuit, the Court finds Plaintiff's cherry-picking argument unpersuasive here.  Rather, at most, Plaintiff's attempts appear to be a request for the Court to reweigh the medical evidence, which the Court cannot do.  Tommasetti, 533 F.3d at 1038 (the court will uphold the ALJ's conclusion where the evidence is susceptible to more than one rational interpretation); see also Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679 (citations omitted).

On this record, the Court finds the ALJ reasonably interpreted the objective medical evidence and substantial evidence supports the ALJ's relevant findings.

---

Carmickle, 533 F.3d at 1160; see also Treichler, 775 F.3d at 1103 ("[T]he ALJ's analysis need not be extensive."); Drummer v. Kijakazi, No. 21-35710, 2022 WL 2953703, at *1 n.3 (9th Cir. Jul. 26, 2022) (citing Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[T]he ALJ does not need to discuss every piece of [medical] evidence.") (internal quotations omitted))).  Indeed, the Ninth Circuit's finding that an ALJ may employ ordinary techniques of credibility evaluation, such as prior inconsistent statements, Ghanim, 763 F.3d at 1163, or determining the claimant is a "vague witness," Tommasetti, 533 F.3d at 1039–40, suggests an ALJ need not even address the content of a claimant's specific allegations to reach an adverse credibility determination.

### b.       Conservative Treatment/Lack of Treatment

Evidence that a claimant's medical treatment was relatively conservative may properly be considered in evaluating a claimant's subjective complaints.  See Tommasetti, 533 F.3d at 1039–40; Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted).

Here, the ALJ determined Plaintiff received limited, conservative treatment after her discharge from the hospital, which appears to consist of postsurgical physical therapy and "nonsevere" pain medications.   (AR 17–18.)   Medication and physical therapy are both considered "conservative" forms of treatment.  See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); Tommasetti, 533 F.3d at 1039–40 (claimant's treatment, including physical therapy, the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset, were deemed "conservative").   In addition, the ALJ noted Plaintiff declined additional surgical consideration.   (AR 18.)   This also supports the ALJ's finding that Plaintiff's treatment was conservative.  See Agatucci v. Berryhill, 721 Fed. App'x 614, 618 (9th Cir. 2017) ("We uphold [the] ALJ's rational interpretation that, because [plaintiff's] condition did not necessitate surgery, her symptoms were not as debilitating as she alleged.") (citing Parra, 481 F.3d at 751); see also Burch, 400 F.3d at 681 ("The ALJ is permitted to consider lack of treatment in his credibility determination.").  Based on the foregoing authorities, the Court concludes the ALJ's finding that Plaintiff's treatment was conservative constitutes a specific and legitimate reason for reaching his adverse credibility determination.

Plaintiff appears to dispute the ALJ's consideration of her decision to forego surgery, arguing that the ALJ should have specifically elicited testimony from Plaintiff as to the reasons supporting her decision.   No so.   Ninth Circuit caselaw indicates an ALJ may consider the absence in the record of any reason for declining medical treatment.  See Larsen v. Kijakazi, No. No. 18-55398, 2022 WL 1537365 (9th Cir. May 16, 2022) ("ALJ may consider the claimant's

'unexplained or inadequately explained failure to seek treatment' ") (quoting <u>Molina</u>, 674 F.3d at 1114 (claimant's "failure to assert a good reason for not seeking treatment" can cast doubt on the sincerity of the claimant's pain testimony, as can reasons for resisting treatment that are attributable to the claimant's personal preference)).  Furthermore, the Court notes it is Plaintiff's burden, not the ALJ's, to establish disability by presenting all supporting evidence.  <u>Smolen</u>, 80 F.3d at 1288; <u>Parra</u>, 481 F.3d at 746.

Plaintiff also disputes the ALJ's characterization of her medications as "nonsevere," where the record includes instances in which Plaintiff received refills of Tramadol and a prescription for Norco, and underwent steroid injections.  (ECF No. 17 at 18.)  However, courts have reached varying conclusions based on the longitudinal records of each particular case as to whether a treatment plan, on whole, may be considered "conservative."  <u>Compare</u>, <u>e.g.</u>, <u>Walter v. Astrue</u>, No. EDCV 09-1569 AGR, 2011 WL 1326529, at *3 (C.D. Cal. Apr. 6, 2011) (ALJ permissibly discredited claimant's allegations based on conservative treatment consisting of Vicodin, physical therapy, and an injection) <u>with</u> <u>Revels v. Berryhill</u>, 874 F.3d 648, 667 (9th Cir. 2017) ("doubting" that epidural steroid shots qualified as "conservative" medical treatment for fibromyalgia).  Here, the Court finds the fact that Plaintiff received some Tramadol, Norco, and injections for pain does not negate the reasonableness of the ALJ's finding that Plaintiff's treatment as a whole was conservative.  <u>See Martin v. Colvin</u>, No. 1:15-cv-01678-SKO, 2017 WL 615196, at *10 (E.D. Cal. Feb. 14, 2017) ("[T]he fact that Plaintiff has been prescribed narcotic medication or received injections does not negate the reasonableness of the ALJ's finding that Plaintiff's treatment as a whole was conservative, particularly when undertaken in addition to other, less invasive treatment methods."); <u>Zaldana v. Colvin</u>, No. CV 13-7820 RNB, 2014 WL 4929023, at *2 (C.D. Cal. Oct. 1, 2014) (finding that evidence of treatment including Tramadol, ibuprofen, and "multiple steroid injections" was a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination); <u>see also</u> <u>Woods v. Kijakazi (Woods II)</u>, 32 F. 4th 785, 794 (9th Cir. 2022) (affirming ALJ's discounting of subjective testimony based on "very conservative" treatment of mostly medication alone and a knee injection).

1    In sum, the ALJ has sufficiently identified multiple clear and convincing reasons in

2    support of his determination that Plaintiff's treatment is inconsistent with the severity of her

3    alleged symptoms.  Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); S.S.R. 16-3p at *10.

4    While Plaintiff may seek to suggest an alternative interpretation of the evidence, this is not

5    sufficient to establish reversible error and the Court "will not engage in second-guessing."

6    Thomas, 278 F.3d at 959; Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679 (citations omitted).

7    Accordingly, the Court finds the ALJ provided clear and convincing reasons supported by

8    substantial evidence for discounting Plaintiff's pain testimony.

9                                                **VI.**

10                                   **CONCLUSION AND ORDER**

11            For the foregoing reasons, IT IS HEREBY ORDERED that:

12       1.    Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF

13                No. 17) is DENIED; and

14       2.    The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant

15                Commissioner of Social Security and against Plaintiff Donna H. Olea and close

16                this case.

17

18    IT IS SO ORDERED.

19    Dated:   **February 2, 2023**          _____

20                                            UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28